UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:18 CR 133 SNLJ (ACL) |
| | ) |
| JAMES LEON GUTHRIE, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge

pursuant to 28 U.S.C. § 636(b).  Pending[1] before the undersigned is the Defendant James

Leon Guthrie's Motion to Suppress Evidence Obtained as a Result of Search or Seizure

(Doc. 38) and Motion to Dismiss or Require Election of Counts (Doc. 47).

Guthrie is charged with possession (Count I) and distribution (Count II) of

pseudoephedrine knowing or having reasonable cause to believe it would be used to

manufacture methamphetamine for events occurring on August 17, 2018.  He's also

charged with possession of a firearm in relation to a drug trafficking crime (Count III).

The evidence Guthrie seeks to suppress was seized from his home on October 19,

2018, pursuant to a Search Warrant that authorized the seizure of: 1) items associated

with the manufacture of methamphetamine, 2) items related to an ongoing child sexual

abuse investigation involving Guthrie, and 3) items officers observed in plain view

---

[1]  The Defendant also filed a Motion to Suppress Statements, Admissions, and Answers (Doc. 37), which he withdrew following the evidentiary hearing (Doc. 57).  As such there is no need to consider the Motion regarding statements and the Defendant's statements are admissible at trial.

during the execution of the Search Warrant and believed to be evidence of other criminal conduct.  The Government responded that it does not intend to use the evidence related to the ongoing child sexual abuse investigation, or items perceived as being related to other criminal conduct, because it is not relevant to the charges pending against Guthrie in this Court.  Therefore, Guthrie's requests for the suppression of items related to the ongoing child sexual abuse investigation, or other criminal conduct are moot; and those arguments will not be discussed.

As for the evidence that was related to the manufacture of methamphetamine, Guthrie argues that the Search Warrant was not supported by probable cause because the information relied upon in the Affidavit was stale.  He contends that because he was arrested for the pseudoephedrine charges on August 17, 2018 and the Search Warrant was not secured until October 19, 2018, "[i]t is fair to infer from these facts that it is not probable that additional evidence of pseudoephedrine or other drug trafficking materials remained in his home." (Doc. 38 at 3.)  Guthrie also argues that the timing of these events was not sufficiently stated by the affiant, in particular, the search occurred two months after charges were filed making him aware of the investigation.  He further claims that Guthrie had not lived at the residence since the time of his arrest.  The Government responded that the totality of the circumstances supported the issuing judge's determination that there was probable cause to believe items related to the manufacture of methamphetamine would be found in Guthrie's residence.

In a separate Motion, Guthrie argues that the Government should be required to make an election between Counts I and II, because "they charge the same offense...

result[ing] in a multiplicitous indictment." (Doc. 47 at 1.)  The Government responded

that while the charges in Count I and II are based on the same facts, it is entitled to use

multiple theories of guilt to prove Guthrie's liability for committing a violation of 18

U.S.C. § 841(c)(2).  If Guthrie is found guilty of both offenses, the Government will

move for the dismissal of one count at sentencing to avoid a double jeopardy violation.

Both parties filed post-hearing briefs.  (Docs. 56, 59.)

In consideration of the pleadings identified above, the testimony of witnesses, and

the exhibits admitted into evidence, the undersigned recommends that the following

findings of fact and conclusions of law be adopted and that Guthrie's pretrial motions be

denied.

## I.  Findings of Fact

On August 17, 2018, the Defendant, James Leon Guthrie, was arrested for

distributing pseudoephedrine to an undercover officer.  He was also found to be in

possession of a firearm.  Guthrie was arrested on State charges; and released from

custody that same month.  (Doc. 38 at 3.)

Two months later, on October 18, 2018, Guthrie was arrested on Federal charges.

On the same day, Acting Sheriff Branden Caid received information from Guthrie's son.

Sheriff Caid used the information to apply for a Search Warrant to search Guthrie's

residence.  The son reported that while Guthrie was in custody, he had been watching

over his father's residence and caring for his father's cat.  The son explained that on

October 18, 2018, he observed items in the residence which he believed may be evidence

related to his father's pending drug case.  The son believed that pills, batteries, and

chemicals he observed in his father's house might be evidence of the offenses for which

Guthrie was facing charges.

Based on the son's report, Sheriff Caid applied for a Search Warrant to seize

"Boxes of Sudafed tablets, Lithium batteries, along with [ ] additional chemicals used in

the manufacturing of methamphetamine." *See* Gov't. Ex. #2 at p. 3.  Sheriff Caid

explained he had probable cause to believe those items would be found in Guthrie's

residence, 606 B Street, East Prairie, Missouri, based on the following facts:

> 2.    On 10/18/2018, I was contacted by an agent from the SEMO Drug Task Force advising me that James Guthrie had been federally initiated[2] for selling methamphetamine pre-cursers.
>
> 3.    Later that evening on 10/18/2018, I received a call from Guthrie's son stating that he located several additional boxes of pills, batteries, chemicals,...inside his father's residence and felt they were evidence of…his crimes.
>
> * * *
>
> 5.    On 10/19/2018, a deputy responded and met with Thomas Guthrie at James Guthrie's residence and verified the items were inside the home.  Thomas Guthrie was overseeing the residence and feeding a cat while his father was in custody.
>
> * * *
>
> 7.    Based on the information obtained I believe there is additional evidence located inside Guthrie's residence.

*Id.* at p. 4.

---

2    As noted by Guthrie, "initiated" appears to be a typo and likely should have read "indicted and arrested."  (Doc. 38 at 2.)  Guthrie's arrest for the instant Indictment occurred on October 18, 2018.  (Doc. 8.)

The Search Warrant was executed the evening of October 19, 2018.  Ten boxes of cold medicine were located and seized.  There were seven boxes of Sudafed PE, one box of Contac Cold+Flu, one box of generic Allergy Relief & Nasal Decongestant, and one bottle of Allergy pills.  *See* Government Exhibit #3.  Sheriff Caid testified that he was aware the Sudafed PE boxes did not contain pseudoephedrine, but that it was reasonable for a layperson to believe the pills contained pseudoephedrine due to the product name, Sudafed.  (Doc. 58 at 54.)

## II.  Conclusions of Law

Guthrie's first argument is that Sheriff Caid's Affidavit contained stale information, thereby negating the issuing judge's finding of probable cause.   His second argument is that prior to trial the Government should be required to elect to pursue either Count I or Count II.  Each claim will be addressed in turn.

### II.A.  Information contained in the Affidavit was not stale.

Guthrie has argued that the Affidavit failed to make a time and location nexus between his residence and the illicit conduct charged in the Indictment at the time of the search.  He claims the "tenuous[ ] connect[ion] to the time and place that the warrant application sought to [ ] search[ ] and items [to be] seized" negates the issuing judge's probable cause finding.   More particularly, Guthrie claims there is a staleness problem because he was:  1) not living at his residence at the time of the search and 2) aware he was under investigation for illicit possession and distribution of pseudoephedrine for the two months prior to the execution of the Search Warrant.  As a practical matter, Guthrie presented no evidence that the residence searched was not his home.  Sheriff Caid

testified he did not know where Guthrie was living after he was released from jail.  (Doc.

58 at 63.)  The record before the Court[3] supports that Guthrie's son was taking care of the

residence, 606B Street in East Prairie, Missouri, and taking care of Guthrie's cat while

Guthrie was in custody.

"Probable cause means a fair probability that contraband or evidence of a crime

will be found in a particular place, given the circumstances set forth in the affidavit."

*United States v. Lemon*, 590 F.3d 612, 614 (8th Cir. 2010) (quotations omitted).  "A

warrant becomes stale if the information supporting the warrant is not sufficiently close

in time to the issuance of the warrant and the subsequent search conducted so that

probable cause can be said to exist as of the time of the search."  *United States v. Brewer*,

588 F.3d 1165, 1173 (8th Cir. 2009).

"The timeliness of the information supplied in an affidavit depends on the

circumstances of the case, including the nature of the crime under investigation."  *United

States v. Smith*, 266 F.3d 902, 904-05 (8th Cir. 2001) (citing *United States v. Koelling*,

992 F.2d 817, 822 (8th Cir. 1993)) (alteration added).  "[T]here is no bright-line test for

determining when information is stale . . . and the vitality of probable cause cannot be

quantified by simply counting the number of days between the occurrence of the facts

supplied and the issuance of the affidavit."  *United States v. Tyler*, 238 F.3d 1036, 1039

(8th Cir. 2001) (quoting *Koelling*, 992 F.2d at 822) (first alteration added).  Instead, when

a staleness claim is made the Eighth Circuit examines "the lapse of time since the warrant

---

3   If in fact the residence searched was not Guthrie's that would have a bearing on
whether the items seized from the residence have any relevance at trial.

was issued, the nature of the criminal activity, and the kind of property subject to the search." *United States v. Huyck*, 849 F.3d 432, 439 (8th Cir. 2017), (quoting *United States v. Etsey*, 595 F.3d 836, 840 (8th Cir. 2010)).  "Where continuing criminal activity is suspected, the passage of time is less significant." *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 2001).

"In investigations of ongoing narcotic operations, 'intervals of weeks or months between the last described act and the application for a warrant [does] not necessarily make the information stale.'" *Smith*, 266 F.3d at 905 (quoting *Formaro*, 152 F.3d at 771) (first alteration added) (three-month old information in affidavit was not considered stale). *See also, Tyler*, 238 F.3d at 1039 (information on a drug sale "within the past 7 months" was not stale).

At the outset, it is worth noting that the circumstances underlying the application for the search warrant in this case are unusual.  First, the affiant received information that the home of an individual who was already facing Federal charges contained evidence related to one of the charges.  Second, the source of the information was a relative of that individual (Guthrie's son), increasing the reliability of the information provided.

Here, the evidence sought pursuant to the Search Warrant was related to the possession of items utilized in the manufacture of methamphetamine.  Guthrie's son observed items he believed could be used in the manufacture of methamphetamine on the day his father was arrested for selling methamphetamine precursors.  While the conduct underlying the Indictment happened two months before the son's report to law

enforcement, evidence that Guthrie had additional pseudoephedrine pills in his possession would be relevant to the case.  The Government noted that:

> Guthrie told the undercover officer that his source for pseudoephedrine pills was a pharmaceutical representative who could get "1,200 pills every ten days."  The Government's theory is that Guthrie's supplier was obtaining bulk amounts of pills and funneling them to Guthrie who was in turn selling them on the black market.  Prior to selling off the pills, Guthrie would nec-essarily need to cull out the pills that could not be used to produce meth-amphetamine.  Guthrie's possession of numerous such boxes tends to prove the truth of Guthrie's statements to the officer, as well as demonstrate his mental state during the offense, *i.e*., that Guthrie knew which pills could be used to make methamphetamine, and which had no value on the black market.

(Doc. 59 at fn. 2.)

Guthrie also argues that even though the presence of the methamphetamine manufacturing items that were described by his son (pills, batteries, and chemicals) was reportedly verified by another officer the evening of October 18, 2018, only pseudoephedrine pills were seized when the Search Warrant was executed.  The officer who verified the presence of the items did not testify.  There is no doubt that pseudoephedrine pills were in the residence as they were seized.  Whether or not the other items were in the residence, or observed by the verifying officer is unknown.  None of the witnesses were asked whether batteries or chemicals were observed in the residence.  In any event, this complaint about whether or not batteries and chemicals were present is not an adequate ground for suppression.

The Affidavit did not advise the issuing judge of when Guthrie allegedly sold the methamphetamine precursors which resulted in Guthrie's arrest on Federal charges.

Guthrie's son contacted law enforcement on the day of Guthrie's arrest in the instant case to report his observance of methamphetamine manufacturing items in Guthrie's home.  In light of the pending State charges, Guthrie knew that law enforcement authorities had detected his illicit pseudoephedrine trafficking activities.  That being said, no search was conducted at Guthrie's residence in conjunction with his August 17, 2018 arrest.  Guthrie's knowledge that he was under investigation does not negate the potential that evidence related to the distribution of pseudoephedrine pills was within his residence when the Search Warrant was sought.

When the Search Warrant was requested, Sheriff Caid provided recent and specific information about the likelihood that items utilized in the manufacture of methamphetamine would be found in Guthrie's home.  Some of the information contained in the Affidavit was provided by Guthrie's son who was in a position to know what items were within the residence.  The son identified individual items that he perceived to be required for the manufacture of methamphetamine in Guthrie's residence and an officer verified the presence of the items in the residence the day before the Search Warrant was requested.  The issuance of the Search Warrant was extremely close in time to the observation of items reasonably believed to be related to criminal activity by someone very close to Guthrie, his own son.  The presence of several boxes of pseudoephedrine in the residence of an individual charged with illicit distribution of that drug the day before the Search Warrant was secured supports there was a fair probability that such evidence would be found.  The request for suppression based on staleness should be denied.

**II.B.  Good Faith**

While evidence obtained as a result of a potentially defective search warrant is generally inadmissible, there is an exception for evidence found by officers relying in objective good faith on a defective search warrant.  *See United States v. Leon*, 468 U.S. 897, 920, 921 (1984).  There are four circumstances under which the *Leon* good faith exception does not apply.  They are as follows:

> . . .(1) the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made "in reckless disregard for the truth"; (2) " the issuing magistrate judge wholly abandoned his [or her] judicial role"; (3) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) the warrant is "so facially deficient. . .that the executing officers cannot reasonably presume it to be valid."

*United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007).  *See also Leon*, 468 U.S. 897 at 832.

Based on the above, the undersigned concludes that even if the Search Warrant was invalid, the good faith exception would apply in this case.  First, although the issuing judge was not advised about *when* Guthrie allegedly sold the methamphetamine precursors that resulted in Federal charges, Sheriff Caid did not include false or reckless statements in the Affidavit.  The omission of the date for the underlying conduct does not change the fact Guthrie's son observed numerous pseudoephedrine pill boxes inside the residence the day before the Search Warrant was secured and executed.  Next, Guthrie does not allege factors two through four are present in this case.

Considering the information contained in the entire Affidavit, it was reasonable for both Sheriff Caid and the issuing judge to believe that the evidence sought would be found in Guthrie's residence.  As such, the Search Warrant and Application were also sufficient under *Leon* standards.

## II.C.  Multiplicity

Guthrie's second Motion requests that this Court direct the Government to make an election between Counts I and II, or alternatively that one of the counts be dismissed on the ground that the two counts charge the same offense resulting in multiplicity. Count I charges possession of pseudoephedrine while Count II charges distribution of pseudoephedrine, when Guthrie knew or had reasonable cause to believe it would be used to manufacture methamphetamine.

The Government agrees that the counts in question "are based on the same set of facts, and as such are not separate and distinct offenses, but merely different theories as to how the defendant committed" the offenses.  (Doc. 49 at 4.)  For instance, evidence of Guthrie's "possession of the pseudoephedrine or his delivery of it with the requisite mental state" would be sufficient for a jury to find him guilty.  *Id*.

Multiplicity is not fatal and does not require the dismissal of the Superseding Indictment. *United States v. Sue*, 586 F.2d 70, 71 (8th Cir. 1978).  The defendant may move to have the prosecution elect, but whether to order election is discretionary with the court. *See* 1A Charles Alan Wright, Federal Practice and Procedure:  Criminal 3d, § 145 at 98-100 (4th ed. 2008).  "The principal danger raised by a multiplicitous indictment is

the possibility that the defendant will receive more than one sentence for a single offense." *United States v. Hearod*, 499 F.2d 1003, 1005 (8th Cir. 1974), citing Wright, § 145 at 336 (1969).  An additional drawback is that pleading multiplicitously may have "some psychological effect upon a jury by suggesting to it that defendant has committed not one but several crimes." *United States v. Street*, 66 F.3d 969, 975 (8th Cir. 1995). That being said, a remedy is available at any time if the defendant is given multiple sentences.  If the two counts state only a single offense and the defendant is convicted on both counts, one of the convictions must be vacated.  *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668 (1985).

In *Ball*, the defendant was convicted of Receipt of a Firearm by a Convicted Felon and Possession of a Firearm by a Convicted Felon.  The Supreme Court held that although the Government could seek a multi-count indictment against the defendant for receiving and possessing the same weapon, where a single act established the receipt and possession, the defendant could not suffer two convictions or sentences on that indictment.

The *Ball* case further found that Congress' legislative intent was that a felon in Ball's position be convicted and punished for only one of the two offenses if the possession of the firearm is incidental to receiving it. The Court found that Congress recognized that a felon who receives a firearm must also possess it and did not intend to subject the person to two convictions for the same criminal act.

Under the reasoning in *Ball*, even if Counts I and II of the Superseding Indictment are multiplicitous, the Government is entitled to plead in such a manner.  At this point, the Government cannot be required to elect.

The Court summarized its decision and provided a remedy in the following statement:

> We emphasize that while the Government may seek a multiple-count indictment against a felon for violations of §§ 922(h) and 1202(a) involving the same weapon where a single act establishes the receipt and possession, the accused may not suffer two convictions or sentences on that indictment. If, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense. Should the jury return guilty verdicts for each count, however, the district judge should enter judgment on only one of the statutory offenses.

*Id*. at 856.

Another reason for not requiring the Government to elect at this time is that the Government may not be able to prove both Count I and Count II.  It should not be deprived of the opportunity to prove what it can at trial.

In *United States v. Mendoza*, 902 F.2d 693 (8th Cir. 1990), the defendant was convicted of conspiring to distribute cocaine, possessing cocaine with intent to distribute, and distributing cocaine.  The Eighth Circuit concluded that a defendant could not be punished for both distributing cocaine and possessing cocaine with intent to distribute when the offenses were based on the same act.  More particularly, the Court noted that "...the permissibility of multiple punishment turns upon whether the underlying offenses

arise 'from a single criminal undertaking involving drugs, and each offense is committed

at virtually the same time, in the same place, and with the same participants.'" *Id*. at 698,

quoting *United States v. Palafox*, 764 F.2d 558, 562 (9th Cir. 1985).

The Eighth Circuit added that where evidence of distribution of an illegal

substance is the only evidence to support a separate possession charge, the defendant

cannot be punished for both offenses.  *Id*.  In the *Palafox* case, the defendant transferred a

package of heroin to an undercover agent and was charged under § 841(a)(1) with both

distributing the heroin and possessing it with intent to distribute.  The Ninth Circuit

observed that there was no evidence that Palafox possessed the heroin prior to the

moment of distribution.  Consequently, it concluded that the offenses charged were

directed at a single criminal undertaking for which the defendant could be punished for

only one offense.  *Palafox*, 764 F.2d at 563.

In view of the foregoing, the acts of possessing pseudoephedrine (Count I) and

distributing the same pseudoephedrine (Count II) reasonably believing the substance

would be used to manufacture methamphetamine may be charged separately.  Guthrie's

Motion to Dismiss or Require Election of Counts should be denied without prejudice.  If

Guthrie is convicted on both Counts I and II, he will be entitled to raise his Motion again.

**III.  Conclusion**

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Defendant's Motion to Suppress

(Doc. 38) the ten packages of cold medicine be **denied**; and the request for suppression of

items related to the ongoing child sexual abuse investigation, or other criminal conduct be found moot.

**IT IS FURTHER RECOMMENDED** that the Defendant's Motion to Dismiss or Require Election of Counts (Doc. 47) be **denied**.

Finally, the parties are advised that they have until September 3, 2019, within which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained.  Failure to file timely objections may result in a waiver of the right to appeal questions of fact.  *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of August, 2019.